## IN THE UNITED STATES DISTRICT COURT IN
## AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Dr. Bruce N. Garrett, M.D. and<br>Dr. Sandra S. Garrett,<br><br>Plaintiffs,<br><br>v.<br><br>Medifacts International, Inc., a Delaware<br>Corporation, Michael Woehler, Herbert H. Hooper,<br>Eugene D. Hill, III, Samuel Barnett, Ampersand<br>2001 Limited Partnership, and International Life<br>Sciences Fund III (LP1)L.P.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)    C.A. No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### NOTICE OF REMOVAL

Defendant Medifacts International, Inc. ("Medifacts), by and through their undersigned

counsel, hereby gives notice that this matter has been removed to the United States District Court

for the District of Delaware pursuant to 28 U.S.C. § 1452 and 28 U.S.C. § 1334.  The grounds for

removal are as follows:

1.    Plaintiffs Dr. Bruce Garret, M.D. and Dr. Sandra S. Garrett (the "Plaintiffs")

commenced the action, entitled *Dr. Bruce N. Garrett, M.D. and Dr. Sandra S. Garrett v. Medifacts*

*International, Inc., Michael Woehler, Herbert H. Hooper, Eugene D. Hill, III, Samuel Barnett,*

*Ampersand 2001 Limited Partnership, and International Life Sciences Fund III (LP1)L.P., C.A. No.*

*2673-N*, in the Court of Chancery of the State of Delaware in and for New Castle County (the

"Complaint").  On information and belief, the Complaint was filed on or about January 16, 2007.

2.    A copy of the Complaint is attached hereto as Exhibit A.

3.    On January 28, 2007, Medifacts filed a voluntary petition for relief under title

11 of the United States Code, 11 U.S.C. §§ 1101 et seq.  (the "Bankruptcy Code") (Case No. 07-

10110 (PJW)).

4.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1452, and 28 U.S.C. § 1334(b) which provides that district courts shall have original jurisdiction of all civil proceedings "arising under title 11, or arising in or related to cases under title 11."

5.     The Defendant has filed a true and correct copy of the Notice of Removal with the Court of Chancery of the State of Delaware in and for New Castle County.  A copy of the Notice of Removal is attached hereto as Exhibit B.

6.     Pursuant to a standing order of this Court, dated September 6, 2001, and pursuant to 28 U.S.C. § 157(a) which provides that chapter 11 cases and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district, this action is referred to the Bankruptcy Court for the District of Delaware.

Dated:  Wilmington, Delaware
        April 19, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Michael R. Nestor (No. 3526)
John T. Dorsey (No. 2988)
Joseph A. Malfitano (No. 4020)
Donald J. Bowman, Jr. (No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

Counsel to Medifacts International, Inc.

and

FOLEY & LARDNER LLP
Michael J. Tuteur
Michael R. Richman
Stephen D. Riden
111 Huntington Ave., Suite 2600
Boston, Massachusetts 02199
Telephone: 617-342-4000
Facsimile: 617-342-4001

Counsel to Medifacts International, Inc.

2

# EXHIBIT A

Complaint

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| DR. BRUCE N. GARRETT, M.D and SANDRA S. GARRETT, PH.D. | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. |
| MEDIFACTS INTERNATIONAL, INC., a Delaware Corporation, MICHAEL WOEHLER, HERBERT H. HOOPER, EUGENE D. HILL III, SAMUEL BARNETT, AMPERSAND 2001 LIMITED PARTNERSHIP, and INTERNATIONAL LIFE SCIENCES FUND III (LP1), L.P., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Plaintiffs Bruce N. Garrett, M.D. and Sandra S. Garrett, Ph.D. ("Plaintiffs" or the "Garretts"), by their undersigned attorneys, allege for their Verified Complaint against Defendants as follows:

### NATURE OF THE ACTION

1.    Plaintiffs bring this action to enforce their contractual rights under an Investor Rights Agreement and Letter of Intent and to remedy numerous breaches of fiduciary duties and other wrongful conduct by the directors and preferred shareholders of Medifacts International, Inc. ("Medifacts" or the "Company") in violation of Delaware law.

2.    In December of 2006, Plaintiffs, who together own a majority of the outstanding shares of common stock of Medifacts, entered into a letter of intent with the Company to acquire the Clinical Research Services division (the "CRO Assets") of Medifacts (the "Transaction").  Pursuant to the provisions of the Letter of Intent setting forth all of the

principal terms for consummation of the Transaction and in reliance upon the express promise of the Defendants to act in good faith, Plaintiffs paid to the Company a deposit of $2.0 million to be applied to the purchase price for the CRO Assets. However, unbeknownst to Plaintiffs, the Defendants never intended to act in good faith to close the Transaction on or before January 2, 2007 as required by the Letter of Intent.

3.      Rather, as became clear following the execution of the Letter of Intent and the payment of the $2.0 million deposit, the directors and management of Medifacts, at the behest of its preferred shareholders, intended to use the deposit as leverage to force the Garretts to give up valuable rights that they possessed as majority shareholders under a Stockholders Agreement dated December 21, 2004 (the "Stockholders Agreement") and Investor Rights Agreement dated December 21, 2004 (the "Investor Agreement").

4.      Solely because of the actions of the directors and management of Medifacts and their failure to act in good faith, the Transaction was not consummated by January 2, 2007 as required by the Letter of Intent. Within minutes of the passing of the time for the closing, Defendants sent an email to the Garretts informing them that their deposit had been forfeited and that the Company had no further obligation to them. Since that time, Defendants have refused to return to the Garretts their $2.0 million deposit, and on January 11, 2007, the Medifacts' Board of Directors, in violation of the right of Dr. Sandra Garrett under the Investor Agreement to consent to such a transaction, purported to approve the Company entering into a letter of intent with Clinical Systems, Inc. ("Clinsys"). The terms of the proposed Clinsys transaction are clearly inferior to the terms under the Garretts' agreement. Accordingly, the members of the Medifacts Board (not including Dr. Sandra Garrett) breached their fiduciary duty

and the terms of the Investor Agreement by entering into this letter of intent with Clinsys and Medifacts should, therefore, be enjoined from completing the transaction with Clinsys.

5.    As set forth below, Defendants fraudulently induced the Garretts to enter into the Letter of Intent. Moreover, the Company breached the terms of the Letter of Intent by failing to fulfill its express obligation to act in good faith to consummate the Transaction. Further, the Director Defendants of Medifacts have acted in blatant breach of fiduciary duty by engaging in a course of conduct intended to strip the Company's majority common shareholders of valuable rights. Even after the Garretts agreed to continue to work with the Company to close the Transaction, the Director Defendants again acted in willful disregard of their fiduciary duties under Delaware law and Dr. Sandra Garrett's rights under the Investor Agreement by purporting to approve the sale of the CRO Assets to Clinsys on terms that are clearly inferior to the offer of the Garretts.

6.    By their actions, the Defendants have not only deprived the Company's common stockholders of additional consideration from the sale of the CRO Assets to which they are entitled under Delaware law, but also have deprived the Garretts of the valuable opportunity to acquire the unique business opportunity represented by those assets.

7.    For these reasons and others set forth below, the consummation of the sale of the CRO Assets to Clinsys should be enjoined, the Clinsys letter of intent should be invalidated, the Director Defendants should be ordered to fulfill their fiduciary duties as well as their contractual duties to the Garretts, and the Garretts should be awarded compensatory damages, including the return of their $2.0 million deposit and an award for their expenses in connection with the Transaction.

3

THE PARTIES

8.    Plaintiff Bruce N. Garrett, M.D. ("Dr. Bruce Garrett") is the Chief Medical Officer of Medifacts and owns 138,487 shares of Medifacts commons stock, representing 2.51 percent of the total equity of Medifacts.

9.    Plaintiff Sandra S. Garrett, Ph.D. ("Dr. Sandra Garrett") is the founder of Medifacts and has been a director of the Company since 1985. Dr. Sandra Garrett owns 2,550,413 shares of Medifacts common stock, which represents 46.16 percent of the total equity of Medifacts. Together, the Garrets own 67 percent of the outstanding common stock of the Company.

10.    Defendant Medifacts is a Delaware Corporation which provides clinical trial services to pharmaceutical, biotech and medical device companies that are developing therapeutic drugs and devices. Medifacts' registered agent in Delaware is the Corporation Trust Company.

11.    Defendant Michael E. Woehler is the President and Chief Executive Officer of Medifacts International, Inc. and a Director of the Company.

12.    Defendant Herbert H. Hooper is a Director of the Company, who was designated by Ampersand 2001 Limited Partnership ("Ampersand"), one of the Company's Series A preferred stockholders, under the terms of the Stockholders Agreement.

13.    Defendant Eugene D. Hill is a Director of the Company, who was designated by International Life Sciences Fund III (LP1), L.P. ("International"), one of the Company's Series A preferred stockholders, under the Stockholders Agreement.

14.    Defendant Samuel Barnett is a director of the Company, who was recommended to serve on the board by International Life Sciences Fund III (LP1) L.P.

4

15.     Defendant Ampersand is a Delaware limited partnership, which together with its affiliate owns fifty percent of the Company's outstanding Series A preferred stock. Ampersand's registered agent in Delaware is the Corporation Trust Company.

16.     Defendant International is a Delaware limited partnership, which together with its affiliates owns fifty percent of the Company's outstanding Series A preferred stock. International's registered agent in Delaware is the Corporation Trust Company.

## BACKGROUND

17.     Because of the serious financial challenges facing the Company and its need for an immediate cash infusion, in October of 2006, the Board of Directors of the Medifacts determined that it was in the Company's best interest to sell one of its two major divisions, the CRO Assets. The CRO division of Medifacts specializes in Phase II, III and IV clinical research for the biotech, pharmaceutical and medical device communities.

18.     In early November, 2006, the Garretts made a formal written offer to purchase the CRO Assets. This offer was never approved or rejected by the Board.

19.     Following the offer of the Garretts, the Company retained Crosstree Capital Partners, Inc. ("Crosstree") to serve as its financial advisor and evaluate the Company's CRO business.

20.     On November 27, 2006, the Board determined that Crosstree should ask a limited group of potential acquirers for an expression of interest in acquiring the CRO Assets in a transaction targeted to close on or before January 31, 2007. As a result of this process, Crosstree identified three potential acquirors for the CRO Assets: Dr. Bruce Garrett, Clinsys, and Veeda.

21.     On December 15, 2006, Bruce Garrett sent a letter of intent to Shane C. Senior, the Managing Director of Crosstree Capital Partners, Inc., offering to acquire the CRO

Assets from the Company. The December 15 letter set forth the principal terms and conditions of the Garretts' offer to acquire the CRO Assets and requested that the Company execute the letter so the parties could begin negotiating in good faith towards a definitive asset purchase agreement. (A true and correct copy of the December 15 letter is attached hereto as Exhibit A).

22.    On December 22, 2006, the Board held a meeting to consider the expressions of interest received from the three bidders. At the meeting, Crosstree recommended that the Clinsys bid be accepted. In response to a request by Dr. Sandra Garrett, the Board determined to adjourn the meeting until December 23, 2006 and to have Crosstree solicit Veeda and Dr. Bruce Garrett to submit new offers that would be more favorable than the Clinsys offers.

23.    After discussions with the Company's management and their advisors, on December 22, 2006, Dr. Bruce Garrett again wrote to Shane Senior supplementing the terms of the December 15 letter and again proposing to enter into a letter of intent regarding the purchase of the CRO Assets. Among other things, the December 22 letter increased the consideration offered by the Garretts for the CRO Assets and amended the terms of the December 15 letter to include a clause at the request of the Company, affirming the Garretts' commitment to engage in discussions regarding the modification of certain rights held by Dr. Sandra Garrett under the Stockholders Agreement and Investor Agreement. (A true and correct copy of the December 22 letter is attached hereto as Exhibit B).

24.    After further negotiation with the Company and its advisors, the Garretts sent two additional letters on December 23, 2006 to Mr. Senior further amending the terms of the their offer. In response to demands by the Company and its advisors, the Garretts increased the purchase price of their offer and Dr. Sandra Garrett agreed to amend the Stockholders Agreement and Investor Agreement such that (a) she would: (1) resign from the Board of

Directors of Medifacts; and (2) agree to designate as directors two individuals acceptable to her and the preferred stockholders of the Company; (b) agree that the consent of a Common Stock Director would not be required for the Company to take certain actions listed in the Investor Rights Agreement; and (c) she would grant a proxy to the holders of Company preferred stock to vote her common stock on any proposal regarding the sale of the CoreLab Services Division of the Company, so long as the proceeds of such sale to the current common stockholders of the Company were at least $15 million. (True and correct copies of the two December 23, 2006 letter from the Garretts are attached hereto as Exhibits C and D)

25.    On December 23, 2006, the Medifacts Board met again to discuss the sale of the CRO Assets. At the meeting, Crosstree updated the Board as to the revised offers that had been received and informed the Board that the Garrett offer would provide the greatest total economic value to Medifacts, followed by the Veeda offer and then the Clinsys offer. Based upon the analysis of Crosstree, the Board determined that the Garrett offer was superior to the other offers. However, purportedly based upon the question of Dr. Bruce Garrett's financial capacity to close the transaction, the Board determined to require Dr. Garrett to provide a two million dollar non-refundable deposit on the next business day (December 26, 2006) and to accept the pledge of Dr. Sandra Garrett's shares immediately until replaced by the deposit. Moreover, the Board determined to require the Garretts to accept their demand for the $2.0 million deposit by 5:00 p.m. on that date, and to the extent the Letter of Intent with Dr. Garrett was not executed by 5:00 p.m. on December 23, 2006, the Board authorized the signing of a letter of intent with Veeda.

26.    Following the December 23 Board meeting, Michael Woehler, the CEO of Medifacts, sent Dr. Bruce Garrett a signed letter via email. (A true and correct copy of the

December 23 letter from Mr. Woehler is attached hereto as Exhibit E). Mr. Woehler's December 23 letter specifically incorporated the terms of the December 15 letter as amended by the December 22 letter and two letters of December 23 (taken together, the letters are referred to herein as the "Letter of Intent"). Most importantly, Mr. Woehler's December 23 letter included, among other things, the demand that the Garretts agree to provide a "non-refundable" cash deposit in the amount of $2.0 million to the Company to secure the deal. Under the terms of the Letter of Intent, if for any reason the deal did not close, Medifacts would be permitted to keep the Garretts' $2.0 million deposit. In consideration for the deposit, the Company committed in the Letter of Intent to act in good faith to consummate the sale of the CRO Letter on or before the January 2, 2007 (the "Closing Date").

27.    Taken together, the correspondence that made up the Letter of Intent fully set forth all of the principal terms between the Garretts and the Company for the consummation of the Transaction.

28.    Believing that the principal terms of the transaction had been agreed upon and based upon the representation of Mr. Woehler and the Company that the Company would act in good faith to consummate the Transaction promptly, and in all events, before the Closing Date, the Garretts signed the December 23 Woehler letter and wired to the Company the $2.0 million deposit. Unbeknownst to the Garretts, the Director Defendants and the Preferred Shareholders never intended to act in good faith in consummating the Transaction. Rather, Defendants intended to use the $2.0 million as leverage to compel Dr. Sandra Garrett to give up valuable rights that she had under the Shareholders Agreement and the Investor Agreement, or absent the Garretts' concession, to take the $2.0 million without closing the Transaction.

8

29.     Almost immediately after execution of the December 23 Woehler letter, the Company refused to provide the Garretts with the most basic financial due diligence necessary to close the Transaction. In addition, at the urging of the preferred stockholders, the Company's management and directors made improper demands upon the Garretts for Dr. Sandra Garrett to give up valuable common shareholder and governance rights well beyond those outlined in the Letter of Intent. Furthermore, the Company unreasonably refused to accept a letter of credit in the amount offered by the Garretts to provide commercially reasonable coverage for potential losses the Company could incur if the Garretts defaulted on payments under any leases assumed as part of the transaction.

30.     On December 27, 2006, both the Garretts and their attorneys wrote to Medifacts and its advisor to complain about the lack of cooperation from Medifacts' management and advisor in closing the deal and to request that the closing be put off for a few days to a week to allow the necessary due diligence and memorializing of the transaction to occur. While Mr. Woehler acknowledged that the Company lacked the personnel to furnish the Garretts with the necessary due diligence because of the holiday season, Defendants nevertheless initially refused to extend the closing date, and then were only willing to extend if the Garretts acceded to material changes to the terms of the Transaction.

31.     Notwithstanding the Defendants' lack of cooperation, on January 1, 2007, the Garretts' attorneys sent the Company and its advisors a set of Transaction documents that were consistent with the Letter of Intent and could serve as the basis for the closing on January 2, 2007. On the morning of January 2, 2007, the Garretts through their attorney reaffirmed their willingness to close the Transaction on the most recently circulated documents that were fully consistent with the Letter of Intent.

9

32.    However, on the Closing Date, Medifacts refused to consummate the Transaction despite the fact that the Garretts were prepared to close pursuant to the terms reflected in the Letter of Intent. At 5:06 p.m. on January 2, 2007, Mr. Woehler sent to Dr. Bruce Garrett an email stating that, because the Transaction was not consummated on or before 5:00 p.m., the deposit was forfeited and the Company had no further obligation to the Garretts.

33.    On January 3, 2007, Dr. Bruce Garrett sent Medifacts' CEO a letter, informing him that, although Medifacts had repudiated and failed to honor its obligations under the Letter of Intent, the Garretts nevertheless remained ready and willing to enter into a deal to acquire the CRO Assets.

34.    Medifacts' CEO responded by letter on January 4, 2007, by outlining three new and entirely different sets of terms for an acquisition of the CRO Assets and stated that Woehler would recommend to the Board that Medifacts sell the CRO Assets to Dr. Garrett only if Dr. Garrett agreed to accept one of the three new sets of terms. This letter was nothing more than an improper attempt to renegotiate the terms of the deal that the parties had previously agreed upon in the Letter of Intent by increasing the purchase price or requiring the Garretts to give up their voting rights as common stockholders or give up their common stock entirely. Moreover, the Company refused to return the Garretts $2.0 million unless they agreed to the revised terms.

35.    On January 9, 2006, Dr. Bruce Garrett again informed Medifacts that he considered it to be in breach of the agreement and demanded the return of the Garretts' $2.0 million deposit. Medifacts' CEO responded that same day and stated that the Garretts would only receive their deposit (less certain amounts) if Medifacts was able to sell the CRO Assets to another buyer.

10

36.    Despite Medifacts' breach of the Letter of Intent and refusal to return the $2.0 million deposit, the Garretts still remained willing to consummate the purchase of the CRO Assets. Given the Defendants' failure to act in good faith to close the Transaction by the Closing Date, the Garretts, however, were unwilling to relinquish their right to the return of their $2.0 million deposit in the event that the parties would not be able to negotiate a definitive purchase agreement. The letter to Woehler on January 9, 2007 expressed a willingness on the part of Dr. Bruce Garrett to discuss the revised terms offered by the Board as long as the deposit was returned or placed in escrow.

37.    On January 9, 2007, Medifacts' CEO informed Bruce Garrett by letter that, because the Garretts insisted on a return of their $2.0 million or transfer the funds into an escrow account as a condition to any further negotiations for the purchase the CRO Assets, Medifacts would move forward with other potential buyers.

38.    On January 11, 2007, Medifacts held a special meeting of its board of directors. Members of the Board (absent Dr. Sandra Garrett) considered the Garrett offer no longer available, despite a communication from two days earlier that clearly expressed a desire to close the transaction by Dr. Bruce Garrett. Although the Clinsys bid had not changed since December 23, 2006 and remained economically inferior to the Garrett bid, over the objection of Sandra Garrett, the board decided to enter into a letter of intent with Clinsys for the sale of the CRO Assets. Consistent with Crosstree's original analysis that the Clinsys offer would provide the lowest total economic value to Medifacts, the terms of this letter of intent remained inferior to the terms of the Letter of Intent Medifacts entered into with the Garretts. Even more egregious, the terms of the Clinsys letter of intent prevented the Board from having any further discussions with the Garretts concerning their superior offer.

11

IRREPARABLE HARM

39.    If the breaches of fiduciary duty and violations of the Investor Agreement and Letter of intent described herein are not remedied, Plaintiffs as well as all other shareholders of Medifacts will suffer substantial, irreparable harm.  Medifacts' shareholders will be deprived of the right under Delaware law to receive the highest value available in the sale of the CRO Assets and Plaintiffs will lose the opportunity to acquire those assets.   Absent injunctive relief, Defendants will consummate a transaction that is far less beneficial to the Medifacts shareholders than the Garretts' currently available superior offer, and the Garretts will forever lose the irreplaceable opportunity to acquire the unique business opportunity of the CRO Assets. Monetary damages for the losses that Plaintiffs and the other Medifacts shareholders will sustain cannot be readily calculated and, in any event, could not compensate the unique loss that Plaintiffs will suffer.

COUNT I – Breach of the Letter of Intent

40.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 39.

41.    On December 23, 2006, Medifacts and the Garretts entered into a binding Letter of Intent, which set forth all of the principal terms pursuant to which the Garretts had the right to acquire the CRO Assets from Medifacts.

42.    In reliance upon the representations and promises made by the Company in the Letter of Intent, the Garretts paid to the Company a $2.0 million deposit on the CRO Assets and expended considerable time, money and effort on the Transaction.

43.    Pursuant to the terms of the Letter of Intent, the Company was expressly obligated to act in good faith to consummate the Transaction by the Closing Date of January 2, 2007, which date could be extended by agreement of the parties.

12

44.    In breach of its express obligations under the Letter of Intent, Medifacts failed to act in good faith to consummate the Transaction. Indeed to the contrary, Medifacts affirmatively and intentionally took actions to prevent the consummation of the Transaction by the Closing Date. Further, Defendants improperly attempted to use the Garrett's $2.0 million as leverage to force the Garretts to give up governance rights well beyond those expressly stated in the Letter of Intent or significantly increase the purchase price agreed-upon in the Letter of Intent.

45.    Further, although the Garretts were prepared to close the Transaction on January 2, 2007 consistent with the terms of the Letter of Intent, the Company refused to close and refused to return the Garretts' deposit.

46.    As a result of Medifacts breaches of the Letter of Intent, the Garretts have suffered substantial harm, including: (1) the loss of the unique opportunity to purchase the CRO Assets and (2) the loss of their $2.0 million deposit, which Medifacts refuses to return.

47.    Because of the unique nature of CRO Assets, the Garretts cannot be adequately compensated through money damages. The Garretts, therefore, seek specific performance of the terms of the Letter of Intent they entered into with Medifacts. In the alternative, the Garretts seek a return of their $2.0 million deposit and the recovery of expenses in connection with the Transaction.

48.    Plaintiffs have no adequate remedy at law.

COUNT II – Breach of Investor Rights Agreement

49.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 though 47.

13

50.     Section 4.2 of the Investor Agreement expressly prohibits the Company from taking certain listed actions without the prior approval of a majority of the Board, which majority shall include at least one of Preferred Stock Director and at least one Common Stock Director.

51.     Selling the CRO Assets falls within the actions listed in Section 4.2 of the Investor Agreement and, therefore, requires the consent of Dr. Sandra Garrett, the only Common Stock Director.

52.     As described above, on January 11, 2007, without Dr. Sandra Garrett's consent, the remainder of the Medifacts Board purported to approve the Company entering into a letter of intent with Clinsys.  Medifacts Board (absent Dr. Sandra Garrett) therefore, breached Section 4.2 of the Investor Agreement.

53.     Plaintiffs have no adequate remedy at law.

### COUNT III – Breach of Fiduciary Duty

54.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 though 52.

55.     The Directors of Medifacts owed uncompromising fiduciary duties of care and loyalty to the Company and its common shareholders under Delaware law.  These fiduciary duties required the Director Defendants to maximize the value of the CRO Assets for the Medifacts shareholders and to refrain from placing their own self-interest and that of the preferred shareholders above the Company and its common shareholders.

56.     At the behest of the preferred stockholders, the Director Defendants have breached their fiduciary duties by placing the interests of the preferred stockholders to have Dr. Sandra Garrett give up her valuable shareholder and governance rights ahead of the interests of the Company and its common shareholders.

14

57.    Moreover, the Director Defendants have further breached their fiduciary duties by causing the Company to breach the Letter of Intent and by agreeing to sell the CRO Assets to Clinsys in an inferior transaction and in violation of the Investor Agreement.

58.    Plaintiffs have no adequate remedy at law.

COUNT IV – Fraud in the Inducement

59.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 57.

60.    Despite Defendants' repeated misrepresentations that they would act in good faith to consummate the sale of the CRO Assets to the Garretts, it is now clear that Defendants had no intention to close the deal absent Dr. Sandra Garrett giving up her valuable common shareholder and governance rights.

61.    In reliance upon Defendants' representations that they would act in good faith to consummate the Transaction on or before the Closing Date, the Garretts paid to the Company a $2.0 million deposit.

62.    Defendants' statements that they would act in good faith to consummate the Transaction were false and intended to induce the Garretts to make the $2.0 million deposit.

63.    If Defendants had not misrepresented that they were willing to close on the Transaction, the Garretts would not have entered into the Letter of Intent and they would not have tendered the $2.0 million deposit.

64.    The Garretts have been damaged by Defendants' misrepresentations in the amount of (i) $2.0 million plus interest representing the deposit the Garretts paid to the Company, *plus* (ii) the fees and expenses the Garretts incurred in negotiating the terms of the Letter of Intent and in negotiating the terms of the definitive transaction agreements, promissory

15

note, pledge agreement, proxy and other documents in preparation for the purchase of the CRO

Assets from Medifacts.

COUNT V – Unjust Enrichment

65.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

though 63.

66.    Pursuant to the Letter of Intent, the Garretts paid Medifacts a $2.0 million

deposit. Thus, Medifacts was enriched by $2.0 million and the Garretts were impoverished by

$2.0 million.

67.    Medifacts' $2.0 million enrichment is directly correlated to the $2.0

million impoverishment suffered by the Garretts.

68.    Medifacts is not justified in retaining the Garretts' $2.0 million deposit.

The Garretts are entitled to a return of this money immediately.

69.    The Plaintiffs have no adequate remedy at law.

COUNT VI – Aiding and Abetting a Breach of Fiduciary Duty

70.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

though 68.

71.    Defendants Ampersand and International knowingly aided and abetted the

Director Defendants in the breach of their fiduciary duties described above.    Defendant

Ampersand and International knew that the Director Defendants had an absolute duty of loyalty

and care under Delaware law.

72.    Nevertheless, with the full knowledge and encouragement of Ampersand

and International, the Company directors and management breached their fiduciary duties by

placing the interests of the preferred stockholders to have Dr. Sandra Garrett give up her valuable

common shareholder and governance rights ahead of the interests of the Company and its

16

common shareholders, and by causing the Company to breach the Letter of Intent and by agreeing to sell the CRO Assets to Clinsys in an inferior transaction, and in violation of the Investor Agreement.

      73.    The Plaintiffs have no adequate remedy at law.

      WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

      A.    Declaring that the Defendants breached the terms of the Letter of Intent with the Garretts;

      B.    Declaring that the Defendants breached the Investor Agreement.

      C.    Declaring that the Director Defendants have breached their fiduciary duties to the Company and its stockholders;

      D.    Declaring that Ampersand and International aided and abetted the breaches of fiduciary duties by the Director Defendants;

      E.    Declaring that the Defendants fraudulently induced the Garretts to enter into the Letter of Intent;

      F.    Temporarily, preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the sale of the CRO Assets to Clinsys;

      G.    Declaring that the letter of intent with Clinsys was entered into in breach of the Director Defendants' fiduciary duties and in violation of the Investor Agreement and therefore the agreement, and all rights granted therein, are null and void and of no further force or effect;

H.     Ordering the Director Defendants to carry out their contractual and fiduciary duties to Plaintiffs and the other shareholders of Company by taking all necessary steps to consummate the sale of the CRO Assets to the Garretts on the terms set forth in the Letter of Intent;

I.     In the event that the sale of the CRO Assets to Clinsys is consummated, rescinding it and setting it aside;

J.     Ordering Defendants immediately to return the $2.0 million deposit to the Garretts;

K.     Awarding compensatory damages against Defendants, individually and severally, in an amount to be determined at trial, together with pre-judgment and post-judgment interest, arising from their breaches and conduct;

L.     Awarding Plaintiffs their costs and expenses, including reasonable attorneys' fees and experts' fees; and

M.     Granting Plaintiffs such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_David J. Teklits (#3221)_
David J. Teklits (#3221)
Kevin M. Coen (#4775)
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiffs*

OF COUNSEL:

18

Stephen I. Glover
Alisa Babitz
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 887-3720

January $16$, 2007

668048.4

# EXHIBIT B

Notice of Removal

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| Dr. Bruce N. Garrett, M.D. and<br>Dr. Sandra S. Garrett, | ) )<br>) | |
| Plaintiffs, | ) )<br>) | |
| v. | ) )<br>) | C.A. No. 2673-N |
| Medifacts International, Inc., a Delaware<br>Corporation, Michael Woehler, Herbert H. Hooper,<br>Eugene D. Hill, III, Samuel Barnett, Ampersand<br>2001 Limited Partnership, and International Life<br>Sciences Fund III (LP1)L.P., | ) )<br>)<br>)<br>)<br>) | |
| Defendants. | ) )<br>) | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that defendant Medifacts International, Inc.

("Medifacts") has removed the above-captioned case to the United States District Court for the

District of Delaware. Service of this notice effects removal. Pursuant to 28 U.S.C. § 1446(d),

upon the filing of this notice, state court actions shall proceed no further unless and until the case

is remanded. 28 U.S.C. § 1446(d); In re Tricord Systems, Inc., 2003 U.S. Dist. LEXIS 6068, at

*5-6 (D. Del. April 11, 2003); Resolution Trust Corp. v. Bayside Developers, 43 F.3d 1230,

1238 (4th Cir. 1994) (holding that "the clear language of the general removal statute provides that

the state court loses jurisdiction upon the filing of the petition of removal.").

066007.1001

Dated:  Wilmington, Delaware
      April 19, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Michael R. Nestor (No. 3526)
John T. Dorsey (No. 2988)
Joseph A. Malfitano (No. 4020)
Donald J. Bowman, Jr. (No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

Counsel to Medifacts International, Inc.

and

FOLEY & LARDNER LLP
Michael J. Tuteur
Michael R. Richman
Stephen D. Riden
111 Huntington Ave., Suite 2600
Boston, Massachusetts 02199
Telephone: 617-342-4000
Facsimile: 617-342-4001

Counsel to Medifacts International, Inc.

2

## CERTIFICATE OF SERVICE

I, Donald J. Bowman, Jr. Esquire, hereby certify that on April 19, 2007, I caused

two paper copies of the Notice of Removal and this certificate of service to be delivered via U.S.

Mail to:

David J. Teklits
Kevin M. Coen
Morris Nichols Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Drs. Bruce and Sandra Garrett
7722 Laurel Leaf Drive
Potomac, MD 20854

Norman L. Pernick
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899

Donald J. Bowman, Jr. (No. 4383)

# CIVIL COVER SHEET

**0 7 - 2 1 1**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Dr. Bruce N. Garrett, M.D. and Dr. Sandra S. Garrett

(b)   County Of Residence Of First Listed Plaintiff: Montgomery
(Except In U.S. Plaintiff Cases)

(c)   Attorneys (Firm Name, Address, And Telephone Number)

| | |
|---|---|
| David J. Teklits | Norman L. Pernick |
| Kevin M. Coen | Saul Ewing LLP |
| Morris Nichols Arsht & Tunnell LLP | 222 Delaware Avenue, Suite 1200 |
| 1201 N. Market Street | P.O. Box 1266 |
| P.O. Box 1347 | Wilmington, DE 19899 |
| Wilmington, DE 19899-1347 | |

## DEFENDANTS

Medifacts International, Inc., a Delaware Corporation, Michael Woehler, Herbert H. Hooper, Eugene D. Hill, III, Samuel Barnett, Ampersand 2001 Limited Partnership, and International LifeSciences Fund III (LP1)L.P.

County Of Residence Of First Listed Defendant: New Castle
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys (If Known)

Michael R. Nestor, Esq.
Donald J. Bowman, Esq.
Young Conaway Stargatt & Taylor, LLP
P.O. Box 391
Wilmington, DE 19899-0391

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place An X In One Box For Plaintiff And One Box For Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in This State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## V. NATURE OF SUIT (Place An X In One Box Only)

### CONTRACT

- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability

### REAL PROPERTY

- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL ROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS

- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS

- ☐ 510 Motions to Vacate Sentence
  **Habeas Corpus**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY

- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 U.S.C. 881
- ☐ 630 Liquor Laws
- ☐ 640 R R & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR

- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl Ret Inc Security Act

### BANKRUPTCY

- ☐ 422 Appeal 28 U.S.C. 158
- 423 Withdrawal 28 U.S.C. 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY

- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 U.S.C. 7609

### OTHER STATUTES

- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates, etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 U.S.C. 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTSE UNLESS DIVERSITY.):

Brief description of cause:
Cause of action for Breach of Contract and Breach of Fiduciary Duties.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   ☐ YES ☐ NO

DEMAND $    Check YES only if demanded in complaint

JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) (See instructions) IF ANY

JUDGE: Walsh (Bankruptcy Court)   Strine (Chancery Court)

DOCKET NUMBERS: 07-10110   2673-N

DATE    4/18/07

SIGNATURE OF ATTORNEY OF RECORD   (4383)

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 7 – 2 1 1 _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 2 _____ COPIES OF AO FORM 85.

_____ 4/19/07 _____
(Date forms issued)

X _____
(Signature of Party or their Representative)

_____ Dustin Frohlich _____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action